FILED

2003 NOV 13 P 5: 32

US D...

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  | | PRISONER |
|---|---|---|
| NATA BOB | : | CIVIL NO. 3:02CV1785 (RNC)(DFM) |
| v. | : | |
| JOHN ARMSTRONG, ET AL. | : | NOVEMBER 12, 2003 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This is a civil rights action brought by an inmate who claims he was not provided with adequate medical care by defendant Dr. Immordino. He further alleges that his mail was tampered with and delayed in being sent to Inmates' Legal Assistance.

Defendants also refer to the Court's Ruling on Defendants' Motion to Dismiss[1] and their Material Facts in Support of their Motion for Summary Judgment.

### STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact ....'" Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993)

---

[1]    The Court in its Ruling on Defendants' Motion to Dismiss, dismissed claims against all defendants in their official capacities; defendants Armstrong and Levesque in their individual capacities; and plaintiff's claims concerning access to the Court.

(citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact."  Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D.Conn. Aug. 28, 1991).  The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide."  Aldrich, 963 F.2d at 523.  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffuci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  See also, Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).  "[I]f after discovery the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," summary judgment is appropriate.  Hellstrom v. U.S. Dep't of Veteran Affairs, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotation marks omitted) (quoting Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996).

"The non-moving party may not rely on conclusory allegations on unsubstantiated speculation.  Instead, 'the non-movant must produce specific facts indicating' that a genuine factual issue exists."  If the evidence (presented by the non-moving party) is merely colorable, or

is not significantly probative, summary judgment may be granted. To defeat a summary judgment motion, 'there must be evidence on which the jury could reasonably find for the [non-movant].'" Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citations omitted).

To successfully oppose a motion for summary judgment, the plaintiff must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE). 1991 WL 218481, at *6 (D.Conn. Aug. 28, 1991). "[T]he mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment." Greene v. Georgia Pardons & Parole Bd., 807 F.Supp. 748, 75 n.5 (N.D. Ga. 1992) (citing Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984)). An affidavit in which the plaintiff merely restates the conclusory allegations of the complaint and denies the truth of the affidavits filed by the defendants is insufficient to create an issue of fact that would make summary judgment inappropriate. Donnelly v. Guion, 467 F.2d 290, 293 (2d Cir. 1972). As one court has stated, to permit such an affidavit to form the basis of denying the defendants' motion for summary judgment "would amount to permitting the plaintiff to keep [his] case in court merely by swearing that [he] has a case." Zenith Vinyl Fabrics Corp. v. Ford Motor Co., 357 F.Supp. 133, 139 (E.D. Mich. 1973). The record in this case, even when considered in a light most favorable to the plaintiff, fully supports the granting of summary judgment in favor of the defendants.

## ARGUMENT

A.     **The Plaintiff Filed An Identical Claim With The Connecticut Commissioner Of Claims Who Heard The Plaintiff's Claims And Rendered A Decision Which This Court Should Give Preclusive Effect**

3

The plaintiff filed the identical claim in this case with the Connecticut Commissioner of Claims. <u>Nata Bob v. State of Connecticut</u>, File No. 18939 (copy attached). By decision dated August 30, 2002, the Claims Commissioner denied the plaintiff's claims following an evidentiary hearing on August 27, 2002. <u>See</u>, Memorandum of Decision, attached. At the hearing, Dr. Edward Blanchette testified that the plaintiff had received appropriate medications; that Celebrex is a non-steroidal, anti-inflammatory medication and only one of a variety of medications appropriate for treatment of plaintiff's condition (Memorandum of Decision, <u>supra.</u>, p.1). Furthermore, Dr. Blanchette testified further diagnostic procedures were not required. <u>Ibid</u>, p.2. These are the same issues that plaintiff is attempting to relitigate here.

"Under the full faith and credit statute, 28 U.S.C. § 1738, a federal court must give a state court judgment 'the same preclusive effect as would be given that judgment under the law of the State in which judgment was rendered.'" <u>Migra v. Warren City School Dist. Bd. of Ed.</u>, 465 U.S. 75, 81 (1983). The preclusion not only extends to issues that a litigant raised (issue preclusion) in a previous state court proceeding, but also to those he could have raised but did not (claim preclusion). <u>Migra</u>, 465 U.S. at 83; <u>see also</u>, <u>Carter v. City of Emporia, Kan</u>, 815 F.2d 617, 619 (10th Cir. 1987).

Although § 1738 is not applicable to unreviewed state administrative determinations, as are at issue here, the same policies and underlying principles of finality and federalism arise when considering administrative decisions. <u>See</u> <u>University of Tennessee v. Elliott</u>, 478 U.S. 788, 794 (1986), which created federal common law guidelines to govern such a situation in the absence of a governing statute, holding that "when a state agency 'acting in a judicial capacity … resolves disputed issues of fact properly before it which the parties have had an adequate

opportunity to litigate,' <u>United States v. Utah Construction & Mining Co.</u>, 384 U.S. 394, 422 (1966), federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." <u>University of Tennessee</u>, 478 U.S. at 799. Therefore, in order to determine whether the Claims Commissioner's decision has a preclusive effect, it must be determined (1) whether the Commission is a state agency; (2) whether the agency acted in a judicial capacity; (3) whether the parties had an adequate opportunity to litigate the issues; and (4) whether the agency's decision would have a preclusive effect in Connecticut courts.

The Office of the Claims Commissioner is a state agency, established as a tribunal for the adjudication of claims against the state when monetary relief is sought. Conn. Gen. Stat. § 4-141, <u>et. seq.</u>; <u>Circle Lanes of Fairfield, Inc. v. Fay</u>, 195 Conn. 534 (1985) (recognizing office as a state agency in that the Uniform Administrative Procedure Act permits limited appeal to Superior Court from Commissioner's decision); <u>Hirshfeld v. Commission on Claims</u>, 172 Conn. 603 (1977); <u>Hollins v. Horn, et al.</u>, Civil No. 2:91CV00893 (PCD) (D.Conn. 1994) (Dorsey, J) (copy attached).

In this case, the plaintiff has already had the opportunity to litigate the issue of whether Dr. Immordino had provided appropriate care. Indeed, the plaintiff failed to demonstrate any negligence on the part of Dr. Immordino, much less a constitutional deprivation. Requiring Dr. Blanchette, Dr. Immordino and other health professionals to testify at trial to what they have already stated under oath serves no beneficial purpose and is an unnecessary waste of judicial and state resources.

A decision of the Claims Commissioner is subject to limited judicial review. <u>See</u>, Conn. Gen. Stat. § 4-164; <u>Hollins v. Horn</u>, <u>supra</u>, pp. 5-6. This Court should give preclusive effect to

5

the determination of the Claims Commissioner and dismiss this action against defendant Immordino.

**B.    Defendant Immordino Was Not Deliberately Indifferent To Any Serious Medical Need**

The plaintiff alleges that the refusal of Dr. Immordino to treat him and provide him with the medication he desired constituted deliberate indifference to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution. It is clear, however, that the plaintiff suffered no harm, much less a constitutional deprivation, from the medical care he has been rendered by Dr. Immordino and others. Indeed, at the Claims Commission hearing, Dr. Blanchette testified that not only was medication other than Celebrex appropriate for the plaintiff, but the treatment he received was proper and no other diagnostics or treatments were necessary. This is consistent with Dr. Immordino's Affidavit in this case and constitutes the only qualified medical opinion in the record.

To establish a claim of inadequate medical care under the Eighth Amendment, a prisoner must prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 50 L.Ed.2d 251, 97 S.Ct. 285 (1976). To prevail on such a claim, a prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. Id., at 104-05. A prisoner's claim that he has not received adequate medical care, or that a physician has committed medical malpractice, does not in itself constitute an Eighth Amendment violation. Id., at 105. Furthermore, the mere fact that a prisoner disagrees with his course of medical treatment does not arise to a per se violation of the Eighth Amendment. See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). To trigger an Eighth Amendment claim for deliberate indifference to a serious medical need, prison

officials must "intentionally deny [] or delay [] access to medical care or intentionally interfere with the treatment once prescribed." Estelle, 429 U.S. at 104-05. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. A physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F.Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06). Allegations of mere negligence in the treatment of a prisoner's physical condition, or claims based on differences of opinion over matters of medical judgment, fail to rise to the level of an Eighth Amendment violation. Ross v. Kelly, 784 F.Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.).

To meet the deliberate indifference standard, the plaintiff must satisfy a two-part test, which contains both an objective and a subjective prong. "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Second, the defendant "must act with a sufficiently culpable state of mind [deliberate indifference]." Id.

Assuming, arguendo, that plaintiff's medical complaints were "sufficiently serious," plaintiff cannot establish that Dr. Immordino was deliberately indifferent to his medical needs. "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." See Hathaway, 37 F.3d at 66, citing Farmer v. Brennan, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). To meet the deliberate indifference standard, the prison official must "know [] of and disregard [] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Hathaway v. Coughlin, 37

7

F.3d at 66, citing <u>Farmer v. Brennan</u>, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).  In other words, "the plaintiff must demonstrate that the defendant actually wished him harm or at least was totally unconcerned with is welfare." <u>Rodriguez v. Mercado</u>, No. 00 Civ. 8588, 2002 U.S. Dist. LEXIS 16057, *1, *26 (S.D.N.Y. Aug. 28, 2002).  In a case where a prisoner failed to produce any evidence that his medical care was unreasonable, inappropriate, or a deviation from accepted medical standards of care, the court found that the prisoner's conclusory complaints alleging inadequacy of his medical treatment were "insufficient to raise a triable issue of fact." <u>Amaker v. Goord</u>, 98 Civ. 3634, 2002 U.S. Dist. LEXIS 5932, *21 (S.D.N.Y. 2002).

Furthermore, a delay in treatment does not in itself indicate a violation of a prisoner's Eighth Amendment rights.  <u>See</u> <u>Demata v. N.Y. State Corr. Dep't of Health Servs.</u>, 198 F.3d 233, 1999 U.S. App. LEXIS 22955, *5-6 (2d Cir. 1999).  Courts have found deliberate indifference in delay situations where prison officials have "deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for three days, or delayed major surgery for two years." <u>See</u> <u>Id.</u>

No such circumstances are present here.  There is no indicating that plaintiff's condition was ever "fast-degenerating" or "life-threatening," and the facts do not indicate that the defendant delayed treatment in order to punish plaintiff.  In fact, the evidence demonstrates that Dr. Immordino treated the plaintiff with appropriate medical care in accordance with the standard of care of practicing physicians.  While the plaintiff alleges Dr. Immordino should have done more, he provides no competent medical evidence demonstrating such requirement.  Both Dr. Immordino an Dr. Blanchette have stated under oath that no other diagnostic measures were required in order to properly treat the plaintiff.  That other physicians have tried different forms

8

of non-inflammatory steroids does not mean that Dr. Immordino's use of Motrin was inappropriate and it can hardly be claimed that such treatment violated the Constitution. Differences of opinion as to treatment does not constitute deliberate indifference. Inmates do not have a constitutional right to the medical treatment of their choice.

In ruling on the defendants' motion to dismiss, the Court held that "[i]f financial considerations induced Imordini [sic] to ignore a substantial risk of harm to Bob, the subjective element of the deliberate indifference standard may be met." Ruling on Motion to Dismiss, p.6. It is clear from Dr. Immordini's Affidavit that the University of Connecticut Correctional Managed Health Care (CMHC) program has a list of formulary drugs which can be prescribed. This list generally includes one drug within a class of drugs. The plaintiff had been receiving Celebrex outside of prison. Instead of Celebrex, CMHC used Motrin, in conformance with these requirements. Such substitutions were entirely appropriate, medically. Dr. Blanchette testified to the same thing at the Claims Commission hearing on the plaintiff's claim. While this process certainly makes monetary sense, it is clear that the procedure is not one solely designed to avoid providing medical care for financial reasons. Moreover, a procedure is in place to allow a physician to request another medication if he deems it appropriate. In this case, Dr. Immodini, at the time he saw the plaintiff, did not deem it appropriate to use a medication other than Motrin. Dr. Blanchette also testified to the appropriateness of using any drug within the class of drugs needed, i.e., a non-steroid anti-inflammatory medication. The exercise of medical judgment by Dr. Immordino in this case does not constitute deliberate indifference or even medical malpractice.

Summary Judgment should enter for Dr. Immordino.

**C.    Captain Santiago Is Entitled To Summary Judgment**

The plaintiff claims his mail was tampered with by correctional officials and that as a result his medical care was compromised. He alleges in his mail grievance that he filed a request to Captain Santiago, but received no response.

Captain Santiago does not have responsibility for inmate mail. He does not collect, process or hand it out. He does not recall receiving a complaint from the plaintiff concerning his mail, but, if he had, he would have simply referred the plaintiff to the mail clerk or his counselor. These facts do not establish the personal involvement of Captain Santiago in any alleged constitutional deprivation resulting from plaintiff's alleged mail problems. See, Meriweather v. Coughlin, 780 F.2d 205 (2d Cir. 1985); McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978).

The Department of Correction has several procedures for handling inmate grievances. Indeed, in this case, the process worked as it is supposed to work: the plaintiff filed a grievance, the grievance was investigated, the plaintiff's mail was found after it has been apparently misplaced; and forwarded to the addressee. There is no evidence that anyone, much less Captain Santiago, deliberately and intentionally obstructed plaintiff's mail privileges.

It is also clear from plaintiff's medical records and the Affidavit of Dr. Immordino that plaintiff's treatment for his old injury on the outside was known. Dr. Immordino did not choose to prescribe Celebrex for the reasons stated by Dr. Immordino in his Affidavit and by Dr. Blanchette at the Claims hearing. Further diagnostic measures were deemed medically unnecessary by both of the above physicians. Thus, whether or not the mail sent by the plaintiff

10

was timely, it cannot be demonstrated that such delay resulted in any harm to the plaintiff. The treatment rendered was medically appropriate and there is no evidence to the contrary, albeit the plaintiff desired a different form of treatment for which he had no right to demand.

For all of the foregoing reasons, summary judgment should enter for defendant Captain Santiago.

> DEFENDANTS
> John Armstrong, et al.
>
> RICHARD BLUMENTHAL
> ATTORNEY GENERAL
>
>
> BY: _____
> Michael J. Lanoue
> Assistant Attorney General
> 110 Sherman Street
> Hartford, CT  06105
> Federal Bar #ct05195
> E-Mail:  michael.lanoue@po.state.ct.us
> Tel: (860) 808-5450
> Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 12th day of November 2003:

> Nata Bob #264728
> Osborn Correctional Institution
> P.O. Box 100
> Somers, CT 06071

> _____
> Michael J. Lanoue
> Assistant Attorney General

11

*1994 Decision file*
*ML*

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ANTHONY HOLLINS                    :

         -vs-                      :    Civil No. 2:91CV00893 (PCD)

WARDEN EVELYN HORN, ET AL.         :

## RULING ON MOTION TO DISMISS

Plaintiff alleges, under 42 U.S.C. § 1983, violations under the Fourth, Fifth, Sixth Eighth and Fourteenth Amendments of the United States Constitution; violations of Article First, Sections 7, 8 and 9 of the Constitution of the State of Connecticut; and negligence in the alleged incident and in failing to provide proper medical care.  Defendants move to dismiss all counts alleging that the subject of the § 1983 claim has been adjudicated in a state proceeding and that judgment must be given preclusive effect, and that the Eleventh Amendment bars suit against the State of Connecticut and its officers in their official capacity.  Plaintiff does not object to dismissal in the latter regard.

## I.  BACKGROUND

Plaintiff was incarcerated in the Hartford Correction Center and while he was being put in a holding cell, he alleges that correctional officer Donald Theriaque closed an electronic cell door a number of times on him.  He was thus trapped between the cell door and the door frame, causing extensive injuries.

AO 72A
(Rev. 8/82)

11

-2-

Defendants agree that plaintiff was struck by the door, but contend that it was because plaintiff was attempting to exit the cell prior to the closing of the cell door.

On November 15, 1989 plaintiff filed a claim regarding the incident with the Connecticut Claims Commissioner, claiming injuries due to the negligence of Theriaque.  A hearing was conducted and the Claims Commissioner found no credibility in the claim that a door closed on plaintiff as he maintained, nor in the claim that the event led to injuries.

The remaining question is whether the decision of the Claims Commissioner bars further litigation as to the claims or issues considered at that hearing.

II.   <u>DISCUSSION</u>

A motion to dismiss under Rule 12(b)(6) must be decided solely on the facts alleged.  <u>Goldman v. Belden</u>, 754 F.2d 1059, 1065-66 (2d Cir. 1985).  Such a motion should be granted only where no set of facts consistent with the allegations could be proven entitling plaintiffs to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The issue is not whether plaintiffs will prevail, but whether they should be afforded the opportunity to offer evidence to prove their claims.  <u>Id.</u>  The question in this case is "whether or not it appears to a certainty under existing laws that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims."  <u>De La Cruz v.</u>

AO 72A
Rev 8/82)

-3-

Tormey, 582 F.2d 45, 48 (9th Cir. 1978), cert. denied, 441 U.S. 965 (1979).

Under the full faith and credit statute, 28 U.S.C. § 1738, a federal court must give a state court judgment "the same preclusive effect as would be given that judgment under the law of the State in which judgment was rendered." Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 81 (1983). The preclusion not only extends to issues that a litigant raised (issue preclusion) in a previous state court proceeding, but also to those he could have raised but did not (claim preclusion). Migra, 465 U.S. at 83; see also Carter v. City of Emporia, Kan, 815 F.2d 617, 619 (10th Cir. 1987).

Although § 1738 is not applicable to unreviewed state administrative determinations, as are at issue here, the same policies and underlying principles of finality and federalism arise when considering administrative decisions. See University of Tennessee v. Elliot, 478 U.S. 788, 794 (1986), which created federal common law guidelines to govern such a situation in the absence of a governing statute, holding that "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' United States v. Utah Construction & Mining Co., 384 U.S. 394, 422 (1966), federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." University of

-4-

Tennessee, 478 U.S. at 799. Therefore, in order to determine whether the Claims Commissioner's decision has a preclusive effect, it must be determined (1) whether the Commission is a state agency; (2) whether the agency acted in a judicial capacity; (3) whether the parties had an adequate opportunity to litigate the issues; and (4) whether the agency's decision would have a preclusive effect in Connecticut courts.

The Office of the Claims Commissioner is a state agency, established as a tribunal for the adjudication of claims against the state when monetary relief is sought.  Conn. Gen. Stat. § 4-141 et seq.; Circle Lanes of Fairfield, Inc. v. Fay, 195 Conn. 534 (1985) (recognizing office as a state agency in that the Uniform Administrative Procedure Act permits limited appeal to Superior Court from Commissioner's decision); Hirschfeld v. Commission on Claims, 172 Conn. 603 (1977).  The fact that the Commissioner acts in a judicial manner is also not challenged, nor is the fact that plaintiff had a full and fair chance to litigate his claims before the Commissioner.

Plaintiff does argue that the Commissioner's decision would not be given preclusive effect in a Connecticut state court.  He points to Convalescent Center of Bloomfield, Inc. v. Dept. of Income Maintenance, 208 Conn. 187 (1988) for the proposition that under Connecticut law, the decision of an administrative agency which is not afforded judicial review does not have a preclusive effect in further litigation.  Convalescent Center dealt with a

AO 72A
(Rev. 8/82)

-5-

claim for Medicare rental reimbursement which was required to be
processed through an administrative route to receive review.  Id.
at 199.  The administrative determination was afforded no
judicial review.  Id.  "[T]he availability of an appeal is a
significant aspect of the conclusiveness of a judgment. . .
without the availability of judicial review, neither the decision
of an administrative agency nor that of a court is ordinarily
entitled to be accorded preclusive effect in further litigation."
Id. at 201.  However, it did not decide "what forms of judicial
review may suffice to provide the needed judicial scrutiny of
administrative adjudication . . . ."  Id.

    The decisions of the Claims Commissioner are granted limited
judicial review.  Although the pertinent statute indicates that
no review is afforded a decision of the Commissioner, see Conn.
Gen. Stat. § 4-164, a decision by the Commissioner may be
reviewed if the decision "was: (1) in violation of constitutional
or statutory provisions; (2) in excess of the commission's
statutory authority; or (3) made upon unlawful procedures."
Circle Lanes, 195 Conn. at 541 n.8 (citing Hirschfeld, 172 Conn.
at 608)  Plaintiff could, for example, claim that the decision
was so egregious and lacking in evidence as to constitute a lack
of due process.  See Conn. Gen. Stat. 4-183(g)(1)-(3).  There is,
therefore, sufficient available judicial review of the
Commissioner's decision to render it a final decision for

-6-

purposes of preclusion if a party does not appeal to the state court.

In the absence of such appeal, the Connecticut courts will give the decision preclusive effect, and a party may not relitigate the issues in a state forum.  It follows that the claim may not be relitigated in a federal forum.

Plaintiff also cites Solomino v. Astoria Federal Savings Loan Assoc., 901 F.2d 1148 (2d Cir. 1990) cert. granted 498 U.S. 1023 (1991) (judgment aff'd and remanded), in which the court held that in the context of an ADEA action, a federal court is not to give an unreviewed state agency decision a preclusive effect.  The court found that Congress had clearly intended that plaintiffs should be able to bring ADEA claims in a federal forum despite agency action.  See also Astoria Federal Sav. and Loan Ass'n v. Solomino, 111 S. Ct. 2166 (1991).  Plaintiff argues that, similarly, he should not be precluded from bringing his § 1983 case in federal court.  However, ADEA actions stand in contrast to § 1983 actions in considering the doctrine of preclusion.  "[N]othing in the language of § 1983 remotely expresses any congressional intent to contravene the common-law rules of preclusion . . . ."  Allen v. McCurry 449 U.S. 90, 97-98 (1980); see also University of Tennessee, 478 U.S. at 797 (same); Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 83 (1984) (state court judgment precludes litigant from pursuing § 1983 claim in federal court if it could have been raised in

-7-

state proceeding).  <u>Solomino</u> is distinguishable and does not hold that a federal court should never afford a preclusive effect to unreviewed state agency decisions in § 1983 cases.

The findings of the Claims Commissioner foreclose the actions presented to this court.  The Commissioner found that the corrections officer was not negligent in closing the cell door, and that plaintiff's rendition of the events was not to be credited.  Additionally, plaintiff's claim that defendants were negligent in failing to provide adequate medical attention for his injuries is precluded in that the issue that he sustained injuries from the alleged incident was also discredited by the Commissioner.  Claims arising out of this incident, including the § 1983, negligence and state constitutional claims cannot therefore be litigated in this forum.

III.  <u>CONCLUSION</u>

The motion to dismiss (document #23) is granted.


SO ORDERED.

Dated at New Haven, Connecticut, this _____8th_____ day of March, 1994.

_____
Peter C. Dorsey
United States District Judge