UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NATA BOB | : | PRISONER<br>CIVIL NO. 3:02CV1785 (RNC)(DFM) |
| v. | : | |
| JOHN ARMSTRONG, ET AL. | : | NOVEMBER 10, 2003 |

## MATERIAL FACTS IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

1. The plaintiff litigated the issue of his medical care before the Connecticut Commissioner of Claims and his claims were denied by decision dated August 30, 2002. Exhibit A.

2. Dr. Peter Immordino is a licensed, practicing physician in the State of Connecticut and have been so since 1971. Prior to that time, Dr. Immordino was licensed to practice medicine in New York.

3. Dr. Immordino received his medical degree from Columbia University.

4. Dr. Immordino is board certified in General Surgery.

5. Dr. Immordino is presently employed by the University of Connecticut and provides medical services to the Department of Correction and has performed these duties for 3 ½ years.

6. Most of Dr. Immordino's services have been performed at the New Haven Correctional Center.

7. While performing these duties, Dr. Immordino saw the plaintiff on several occasions between May and October of 2000.

8. In May, the plaintiff informed Dr. Immordino of a two-year old injury to his left hand which he stated occurred when he scraped his hand causing foreign bodies to enter his hand.

9. The plaintiff told Dr. Immordino he had two surgeries to remove these foreign bodies and was given Celebrex for pain. His medical records indicated that 200mg of Celebrex was given.

10. This surgery is minor and does not involve repair of tendons, nerves or ligaments.

11. Celebrex is a non-steroidal, anti-inflammatory agent used to control pain and inflammation. It is one of a number of such drugs. Motrin is also in this class of drugs.

12. Dr. Immordino's initial examination revealed no significant injury, scar on left hand, and full range of motion, and he ordered Motrin 200mg every three hours for pain and a sling for his hand.

13. Motrin is in the same class of drugs as Celebrex and it is entirely medically appropriate to use either drug to control inflammation and pain as exhibited by the plaintiff's condition in this case.

14. The plaintiff's hand was unremarkable other than a scar on the dorsum. The foreign bodies had been removed and the plaintiff had full range of motion.

15. The plaintiff's complaints, his history, and Dr. Immordino's examination, did not indicate the further necessity of any diagnostic procedure including x-rays. Absent any objective evidence of a continuing injury, there was no need to perform further diagnostic procedures.

16. On July 26, 2000, the plaintiff complained about his eyesight and Dr. Immordino referred the plaintiff to the optometrist. He did not complain about his hand at this time.

17. On August 31, 2000, the plaintiff complained that he had boils. Dr. Immordino noted lymphadenophy, which is swelling of inflamed lymph nodes. Dr. Immordino aspirated the lymph nodes utilizing a local anesthetic and then sent the aspirate for a culture.

18. Dr. Immomrdino saw the plaintiff again on September 7, 2000, and the lymph node had reduced. Dr. Immordino requested to see the plaintiff a week later.

19. On October 30, 2000, Dr. Immordino saw the plaintiff again. The plaintiff had full range of motion; no deformity; a question of decreased sensation, left index middle finger; healed laceration (scar) of the dorsum. Dr. Immordino noted the possible sensory loss and the plaintiff informed Dr. Immordino that he expected to get out of prison in December. Dr. Immordino suggested the plaintiff see a physical therapist when he was out to determine whether or not physical therapy might be helpful.

20. Plaintiff's injury did not effect his tendons, but the plaintiff had possible nerve damage. Such an injury could not have been repaired by a hand specialist.

21. As a physician and surgeon, Dr. Immordino's knowledge was sufficient to make this determination and the opinion of a hand surgeon was not necessary. Furthermore, the injury occurred in 1998. If a hand surgeon could have helped the plaintiff's condition at the time of the injury or shortly thereafter, but not at the time of his incarceration.

22. One week later, the plaintiff returned to sick call but was upset because he had to wait and refused to see Dr. Immordino unless he could be seen before another inmate. After this request was denied, the plaintiff left the medical unit.

23. Dr. Immordino did not see the plaintiff again.

24. A review of the plaintiff's medical records indicates the plaintiff was put on Celebrex about one year after Dr. Immordino last saw him, based on the plaintiff's complaint that Motrin was not effective in reducing his pain.

3

25. The University of Connecticut Correctional Managed Health Care program has a list of formulary drugs which can be prescribed. This list is prepared by physicians and normally includes one drug within a class of drugs. If a physician desires to prescribe a drug not on the list, he must submit a request identifying the reasons such drug would be appropriate.

26. At the time Dr. Immordino saw the plaintiff, Motrin was on the formulary list; Celebrex was not.

27. The plaintiff did not complain to Dr. Immordino that Motrin was not effective at any time. Had he done so, Dr. Immordino would have considered making a request for Celebrex, or he may also have just increased the dose of Motrin, depending on the circumstances at that time.

28. At no time did Dr. Immordino ignore any of the plaintiff's medical conditions and his care was appropriate and fully met the standard of care of practicing physicians in the State of Connecticut.

29. At no time did Dr. Immordino refuse to provide appropriate treatment because of the cost of such treatment. Moreover, Dr. Immordino is not the decision-maker for determining the appropriate drug within classes of drugs which are placed on the formulary list. However, if Dr. Immordino deemed it appropriate, he would certainly request any drug which in his medical opinion, and based on circumstances then present, a non-formulary drug and has done so when appropriate.

The preceding facts numbered 2 through 29 are supported by the Affidavit of Immordino and the plaintiff's medical records.

30. Captain Santiago is a Captain employed for the Department of Correction at the Cheshire Correctional Institution.

31. Captain Santiago has been employed by the Department of Correction since 1989.

32. From June of 1999 to December of 2001, Captain Santiago was assigned to the New Haven Community Correctional Center.

33. Captain Santiago's job responsibilities did not include the handling of mail.

34. Mail was collected by correctional officers, who brought the mail to the mail clerk, who processed the mail.

35. Captain Santiago was aware that the plaintiff complained and filed a grievance concerning mail that was lost. The mail was apparently misplaced. It was found and forwarded to the addressee.

36. At no time did Captain Santiago interfere with or prevent the plaintiff's mail from being processed.

37. Captain Santiago has no recollection of the plaintiff making any request to him concerning his mail. If he did, such request would have been referred to his counselor and/or the mail clerk.

38. Captain Santiago was not aware of any other complaints by the plaintiff concerning mail nor was he aware of other inmates making complaints that mail was lost or misplaced while he was at the New Haven Community Correctional Center.

39. At no time did Captain Santiago intentionally interfere with the plaintiff's mail.

The preceding facts numbered 30 through 39 are supported by the Affidavit of Captain Santiago.

DEFENDANTS
John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: *[signature]*
Michael J. Lanoue
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct05195
E-Mail: michael.lanoue@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 12th day of November 2003:

Nata Bob #264728
Osborn Correctional Institution
P.O. Box 100
Somers, CT 06071

*[signature]*
Michael J. Lanoue
Assistant Attorney General

6