UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NATA BOB | : | CIVIL NO. 3:02CV1785 (RNC)(DFM) |
| | : | |
| JOHN ARMSTRONG, ET AL. | : | SEPTEMBER 26, 2003 |

### AFFIDAVIT

I, Peter A. Immordino, being first duly sworn, do hereby depose and say:

1. I am a licensed, practicing physician in the State of Connecticut and have been so since 1971. Prior to that time, I was licensed to practice medicine in New York.

2. I received my medical degree from Columbia University.

3. I am board certified in General Surgery.

4. I am presented employed by the University of Connecticut and provide medical services to the Department of Correction. I have performed these duties for 3 ½ years.

5. Most of my services have been performed at the New Haven Correctional Center.

6. While performing these duties, I saw the plaintiff on several occasions between May and October of 2000.

7. In May, the plaintiff informed me of a two-year old injury to his left hand which he stated occurred when he scraped his hand causing foreign bodies to enter his hand.

8. The plaintiff told me he had two surgeries to remove these foreign bodies and was given Celebrex for pain. His medical records indicated that 200mg of Celebrex was given.

9. This surgery is minor and does not involve repair of tendons, nerves or ligaments.

10. Celebrex is a non-steroidal anti-inflammatory agent used to control pain and inflammation. It is one of a number of such drugs. Motrin is also in this class of drugs.

11. My initial examination revealed no significant injury, scar on left hand, and full range of motion. I ordered Motrin 200mg every three hours for pain and a sling for his hand.

12. Motrin is in the same class of drugs as Celebrex and it is entirely medically appropriate to use either drug to control inflammation and pain as exhibited by the plaintiff's condition in this case.

13. The plaintiff's hand was unremarkable other than a scar on the dorsum. The foreign bodies had been removed and the plaintiff had full range of motion.

14. The plaintiff's complaints, his history, and my examination, did not indicate the further necessity of any diagnostic procedure including x-rays. Absent any objective evidence of a continuing injury, there was no need to perform further diagnostic procedures.

15. On July 26, 2000, the plaintiff complained about his eyesight and I referred the plaintiff to the optometrist. He did not complain about his hand.

16. On August 31, 2000, the plaintiff complained that he had boils. I noted lymphadenophy, which is swelling of inflamed lymph nodes. I aspirated the lymph nodes utilizing a local anesthetic. I sent the aspirate for a culture.

17. I saw the plaintiff again on September 7, 2000. The lymph node had reduced. I requested to see him a week later.

18. On October 30, 2000, I saw the plaintiff again. He had full range of motion; no deformity; a question of decreased sensation, left index middle finger; healed laceration (scar) of the dorsum. I noted the possible sensory loss. The plaintiff informed me he expected to get out

of prison in December. Although I doubted his success, I suggested he see a physical therapist when he was out to determine whether or not physical therapy might be helpful.

19. Plaintiff's injury did not effect his tendons. The plaintiff had possible nerve damage, however, this is not an injury which could have been repaired by a hand specialist. As a physician and surgeon, my knowledge was sufficient to make this determination and the opinion of a hand surgeon was not necessary. Furthermore, the injury occurred in 1998. If a hand surgeon could have helped the plaintiff's condition, it would have been at the time of the injury or shortly thereafter, in my medical opinion.

20. One week later, the plaintiff returned but was upset because he had to wait and refused to see me unless he could be seen before another inmate. This request was denied, and he left.

21. I did not see the plaintiff again. My review of the plaintiff's medical records indicates the plaintiff was put on Celebrex about one year after I last saw him, based on the plaintiff's complaint that Motrin was not effective in reducing his pain.

22. The University of Connecticut Correctional Managed Health Care program has a list of formulary drugs which can be prescribed. This list is prepared by physicians and normally includes one drug within a class of drugs. If a physician desires to prescribe a drug not on the list, he must submit a request identifying the reasons such drug would be appropriate.

23. Motrin was on the formulary list; Celebrex was not, when I saw the plaintiff.

24. The plaintiff did not complain to me that Motrin was not effective at any time. Had he done so, I would have considered making a request for Celebrex. I may also have just increased the dose of Motrin depending on the circumstances at that time.

25. At no time did I ignore any of the plaintiff's medical conditions and my care was appropriate and fully met the standard of care of practicing physicians in the State of Connecticut.

26. At no time did I refuse to provide appropriate treatment because of the cost of such treatment. Moreover, I am not the decision-maker for determining the appropriate drug within classes of drugs which are placed on the formulary list. However, if I deemed it appropriate, I would certainly request any drug which in my medical opinion, and based on circumstances then present, request a non-formulary drug and have done so when appropriate.

I have read the foregoing and it is all true and accurate to the best of my knowledge and belief.

_____
Peter A. Immordino

Subscribed and sworn to before me this 3rd day of October 2003.

_____
Beverly J. O'Brien
Commissioner of the Superior Court

My Commission Exp. May 31, 2004

4