UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NATA BOB | : | CIVIL NO. 3:02CV1785 (DFM) |
| v. | : | |
| JOHN ARMSTRONG, ET AL. | : | APRIL 12, 2005 |

## JOINT TRIAL MEMORANDUM

### I.    Trial Counsel

Nata S. Bob, Pro Se
for the Plaintiff
2055 Valentine Avenue, Apt. 2
Bronx, NY 10457
Tel: (718) 220-1236

The trial counsel for the defendant, Dr. Peter Immordino, will be:

| | |
|---|---|
| Michael J. Lanoue | Neil D. Parille |
| Assistant Attorney General | Assistant Attorney General |
| Federal Bar #ct05195 | Federal Bar #ct15278 |
| 110 Sherman Street | 110 Sherman Street |
| Hartford, CT 06105 | Hartford, CT 06105 |
| Tel: (860) 808-5450 | Tel: (860) 808-5450 |

### II.    Jurisdiction

42 U.S.C. § 1983

28 U.S.C. § 1343(a)(3)

### III.    Jury / Non-Jury

This is a jury case.

**IV.       Nature of the Case**

This is a civil rights action in which the plaintiff claims his constitutional right to be free from cruel and unusual punishment pursuant to the Eighth Amendment to the Constitution was violated by the defendant.  At issue is whether the defendant was deliberately indifferent to the plaintiff's pain and whether or not the defendant is, in any event, entitled to qualified immunity from damages.

**V.       Stipulations of Fact and Law**

The parties stipulate to the following facts:

1.       The plaintiff was incarcerated from April 11, 2000 to May 19, 2000, at the New Haven Correctional Center and was readmitted to the New Haven Correctional Center on June 7, 2000.

2.       The plaintiff was transferred to the Carl Robinson Correctional Institution on March 23, 2001, to the Hartford Correctional Center on May 29, 2002 and to the Osborn Correctional Institution on July 1, 2002.

3.       Plaintiff was discharged from the Department of Correction on November 24, 2003.

4.       Upon entering the New Haven Correctional Center, the plaintiff had a two-year old injury to his left hand.

5.       Dr. Peter Immordino is a licensed, practicing physician in the State of Connecticut and has been so since 1971.  Prior to that time, Dr. Immordino was licensed to practice medicine in New York.

6.       Dr. Immordino received his medical degree from Columbia University.

7.       Dr. Immordino is board certified in General Surgery.

8.       Dr. Immordino is presently employed by the University of Connecticut and provides medical services to the Department of Correction and has performed these duties for 3 ½ years.

9.       Most of Dr. Immordino's services have been performed at the New Haven Correctional Center.

10.     While performing these duties, Dr. Immordino saw the plaintiff on several occasions between May and October of 2000.

11.     In May, the plaintiff informed Dr. Immordino of a two-year old injury to his left hand which he stated occurred when he scraped his hand causing foreign bodies to enter his hand.

12.     The plaintiff had two surgeries prior to his incarceration to remove these foreign bodies and was given Celebrex 200mg for pain.

13.     The surgeries did not involve repair of tendons, nerves or ligaments.

14.     Celebrex is a non-steroidal, anti-inflammatory agent used to control pain and inflammation.

15.     Dr. Immordino's initial examination resulted in an order for Motrin 200mg every three hours for pain and a sling for his hand.

16.     Motrin is in the same class of drugs as Celebrex.

17.     On July 26, 2000, the plaintiff complained about his eyesight and Dr. Immordino referred the plaintiff to the optometrist.

18.     On August 31, 2000, the plaintiff complained that he had boils. Dr. Immordino noted lymphadenophy, which is swelling of inflamed lymph nodes.  Dr. Immordino aspirated the lymph nodes utilizing a local anesthetic and then sent the aspirate for a culture.

19.     Dr. Immomrdino saw the plaintiff again on September 7, 2000, and the lymph node had reduced.  Dr. Immordino requested to see the plaintiff a week later.

20.     On October 30, 2000, Dr. Immordino saw the plaintiff again.  The plaintiff had full range of motion; no deformity; a question of decreased sensation, left index middle finger; healed laceration (scar) of the dorsum.  Dr. Immordino noted the possible sensory loss.

21.     Plaintiff's injury did not effect his tendons, but the plaintiff had possible nerve damage.

22.     Dr. Immordino did not see the plaintiff again after October 30, 2000.

23.     Defendant's employer, The University of Connecticut Correctional Managed Health Care program has a list of formulary drugs which can be prescribed.  This list is prepared by physicians and normally includes one drug within a class of drugs.  If a physician desires to prescribe a drug not

on the list, he must submit a request identifying the reasons such drug would be appropriate.

24.     At the time Dr. Immordino saw the plaintiff, Motrin was on the formulary list; Celebrex was not.

## VI.     Plaintiff's Contentions

The plaintiff contends the defendant was deliberately indifferent to his medical needs by failing to order appropriate medication for pain, for failing to order further diagnostic measures, and for failing to refer him to a hand specialist.

## VII.     Defendant's Contentions

The defendant contends he rendered proper and appropriate medical care to the plaintiff.

## VIII.     Legal Issues

1.     Whether the defendant violated the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

2.     Whether the defendant is entitled to qualified immunity from damages.

## IX.     Voir Dire Questions

1.     Do you, or does any member of your family, know the plaintiff, defendants, attorneys or any of the named witnesses in this case?

2.     This case involves a claim by a prison inmate alleging excessive force and denial of medical treatment.  The defendant is a Connecticut prison physician.  Have you or has any member of your family had any experience with any prison, prisoner or prison official which would prevent you from considering the evidence impartially and fairly?

3.     The Court will instruct you on the law which you are about to apply to the facts as you find them.  One of these instructions will be that the burden of proof on all material facts rests on the plaintiff.  Does anyone believe that they will have trouble accepting that instruction?

4.      Does anyone believe that monetary damages must be awarded to the plaintiff just because he has filed a lawsuit?

5.      A portion of the testimony in this case will come from doctors or other medical personnel and prison employees.  Have you or has any member of your family had a personal experience which would make it difficult for you to believe their testimony?

6.      (a).  Is any member of your family an attorney?

        (b).  Do you or does any member of your family work for an attorney?

7.      The Court will instruct you that the defendant must be judged on the basis of his own conduct.  The actions of other persons cannot be imparted to the defendant.  Does anyone believe that they will have difficulty accepting that instruction?

8.      Have you or has any member of your family ever been in a dispute with a state official, correctional officer or physician?

9.      Have you ever been a party in a lawsuit or has any member of your family ever been a party in a lawsuit?

10.     Have you ever served on a jury before?  What was your experience?

**X.      Witnesses**

**A.      Defendant's Witnesses**

Defendant Dr. Peter Immordino is expected to testify as to his proper treatment of the plaintiff, the requirements of his employer as to the prescription of medication, his knowledge of correctional medicine and the community standard of care as it relates to his treatment of the plaintiff.  Duration of testimony:  two to three hours.

Dr. Edward Blanchette is expected to testify as to his expertise in treating inmates held within correctional institutions, his expert opinion as to proper treatment of plaintiff's condition, the requirements of the Department of Correction as to the prescribing of pain medication and the community standard of care as it relates to

plaintiff's condition.  He will testify as to the proper treatment of the plaintiff by the defendant.  Dr. Blanchette will rely on the medical records of the plaintiff. Duration of testimony:  one to two hours.

Nurse Erslaine Edwards, 24 Wolcott Hill Road, Wethersfield, CT 06109 is expected to testify as to the plaintiff's intake screening on April 11, 2000, and plaintiff's complaints.  Duration of testimony:  less than one hour.

Nurse Elizabeth Dunay, 24 Wolcott Hill Road, Wethersfield, CT 06109 is expected to testify as to the plaintiff's intake screening on June 7, 2000.  Duration of testimony:  less than one hour.

Nurse Charlene DeCompos, 24 Wolcott Hill Road, Wethersfield, CT 06109 is expected to testify as to plaintiff's complaints and treatment in 2000 at New Haven Correctional Center.  Duration of testimony:  less than one hour.

Virginia Oakley, 24 Wolcott Hill Road, Wethersfield, CT 06109 is expected to testify as to her knowledge of the plaintiff's medical treatment and grievances during 2000 at the New Haven Correctional Center.  Duration of testimony;  less than one hour.

Nurse Joanne Grudup, 24 Wolcott Hill Road, Wethersfield, CT 06109 is expected to testify as to the medical treatment of the plaintiff during 2000 at the New Haven Correctional Center.

Nurse Lisa Clark, 24 Wolcott Hill Road, Wethersfield, CT 06109 is expected to testify as to the medical treatment of the plaintiff during 2000 at New Haven Correctional Center.  Duration of testimony:  less than one hour.

Department of Correction Records Specialist(s), 24 Wolcott Hill Road, Wethersfield, CT 06109 are expected to authenticate plaintiff's central and medical records (if necessary).  Duration of testimony:  less than one hour.

Nurse Arlene Lewis, 24 Wolcott Hill Road, Wethersfield, CT 06109 is expected to testify as to the plaintiff's treatment while at New Haven Correctional Center. Duration of testimony:  less than one hour.

Dr. Omprakash Pillai, 24 Wolcott Hill Road, Wethersfield, CT 06109 is expected to testify as to plaintiff's medical treatment at Osborn Correctional Institution from 2001 to 2003.  Duration of testimony:  one to two hours.

Dr. Glenn Gerratana, 24 Wolcott Hill Road, Wethersfield, CT 06109, is expected to testify as to plaintiff's treatment at New Haven Correctional Center during 2000.  Duration of testimony:  less than one hour.

Dr. Germaine Bianchi, 24 Wolcott Hill Road, Wethersfield, CT 06109, is expected to testify as an expert as to his and the defendant's appropriate treatment of the plaintiff.  Duration of testimony:  less than one hour.

The defendant respectfully requests the right to call rebuttal witnesses or supplement this list for good cause shown.

**Plaintiff objects to Dr. Edward Blanchette, who had not treated plaintiff and he is not a hand surgeon specialist but only serves the interest of defendant in a cover-up, plus D.O.C. records specialist as they are all in a conspiracy scheme.**

B.    **Plaintiff's Witnesses**

1.    The plaintiff will testify as to the allegations of his complaint concerning the defendant, Dr. Immordino.

2.    A constitutional law expert to testify as to what act of a doctor constitues a deliberate indifference to an inmate, and whether the defendant's actions violated plaintiff's 8th Am. Constitution to a proper treatment of his serious medical needs, by delaying and denying it to him. [sic]

**The defendant object to such a witness as the Court is the only appropriate legal expert at trial.  Additionally, this witness is not named or identified.**

3.    A medical doctor – whether it is ethical for a competent doctor in good standing in the medical profession to prescribe Motrin medication for his/her patient as the plaintiff without giving patient medicine to protect his stomach and whether shall not every doctor know this medical fact. [sic]

**The defendant objects to this witness as being unnamed and not identified.**

4.    A hand surgeon specialist – to testify to the negative effects an unproperly treated aggravated wrist injury operated upon twice and aggravation caused by constant handcuffings and whether defendant acted professionally by refusing to refer plaintiff to a hand surgeon.

**The defendant objects to this witness as being unnamed and not identified.**

B.    **Defendant's Exhibits**

**NOTE:** Exhibits containing evidence after October of 2000 may or may not be entered into evidence by the defendant at trial, depending on evidence provided by the plaintiff at trial and evidentiary rulings of the Court. Such exhibits are listed as contingent exhibits for this reason.

1.    Department of Correction Medical - Clinical Record of the plaintiff from April 11, 2000 to July 9, 2003

2.    Department of Correction Medical - Physician's Orders relating to the plaintiff from April 11, 2000 to August 29, 2002

3.    Department of Correction Medical - Plaintiff's Diagnostic Radiologic Report, typed April 30, 2001 of Plaintiff's Left Wrist, PA, Lateral and Oblique views.

4.    Medical - Department of Correction Facilities Non-Formulary or Restricted Drug Request dated April 26, 2001

5.    Medical – Department of Correction Medication Reports of the plaintiff from April 12, 2000 to September 30, 2003

6.    Plaintiff's Medical Intake Health Screening Record of April 11, 2000

7.    Plaintiff's Medical Intake Health Screening Record of June 7, 2000

8.    Plaintiff's RT60 showing his institutional movements from 1998 to 2003

9.    Inmate Grievance of Plaintiff, Plaintiff's Exhibit 10, November 3, 2000

C.    **Plaintiff's Exhibits**

**The defendant has numerous objections to plaintiff's exhibits as set forth in his Motion in Limine, dated April 4, 2005.**

1.    Prescription written by Dr. Yao L. Kaledzi

2.    An evaluation by one Sherry Husney.

3.    A bill dated April 18, 2000, from Midstate Medical Center.

4.    Department of Correction, Clinical Record, entries on April 11, 2000, April 13, 2000, April 17, 2000 and April 27, 2000 (possibly April 25, 2000).

5.      Department of Correction, Clinical Record, entries on July 12, 2000, March 1, 2001, March 23, 2001 and March 24, 2001.

6.      Department of Correction, Clinical Record, entries on October 27, 2000, October 31, 2000 and November 18, 2000, including statements by the plaintiff in his handwriting.

7.      Department of Correction, Physician Orders, entries dated April 17, 2000 and May 1, 2000.

8.      Department of Correction, Clinical Record, entries dated May 1, 2000 and June 8, 2000.

9.      Note by Samuel K. Mensah, M.D., dated May 22, 2000.

10.     Inmate Grievance, dated November 8, 2000.

11.     Letter from Attorney Jane Starkowski to the plaintiff, dated October 27, 2000.

12.     Physician's Orders, entries dated April 20, 2001, April 23, 2001, June 7, 2001, June 8, 2001, July 19, 2001 and October 22, 2001.

13.     Department of Correction Non-Formulary or Restricted Drug Request, dated July 19, 2001.

14.     Carl Robinson Correctional Institution Inmate Request Form, dated May 27, 2001.

15.     Letter from Yao L. Kaledzi, M.D., dated February 12, 2005.

16.     Prescription of Yao Leonard Kaledzi, M.D., dated March 2, 2005.

17.     Note of Yao Leonard Kaledzi, dated March 2, 2005.

18.     Prescription of Yao Leonard Kaledzi, M.D., for Occupational Therapy, dated March 2, 2005.

19.     Plaintiff's criminal court records.

The plaintiff responds to defendant's objections to Exhibits 6 and 11, as follows:

**OBJECTIONS:   Plaintiff believes all his exhibits are relevant.   Plaintiff objects to defendant's objection of Exhibits 6 and 11 as they had already been admitted as presented to the Court and serve as medical documents proving plaintiff had exhausted all administrative remedies before he filed the suit; they are as relevant as all the defendant's evidences.   Defendant is willing to stipulate that plaintiff exhausted his administrative remedies.**

9

**XI.**      <u>**Deposition Testimony**</u>

None.

**XII.**      <u>**Request for Jury Instructions**</u>

<u>**Deliberate Indifference To Serious Medical Needs**</u>

Did the plaintiff prove by a preponderance of the evidence (1) that the deprivation alleged is "objectively sufficiently serious" such that the plaintiff was denied "the minimal civilized measure of life's necessities," and (2) that the defendant official possessed a "sufficiently culpable state of mind" associated with "the unnecessary and wanton infliction of pain."

<u>See</u> <u>Trammel v. Keane</u>, 338 F.3d 1555 (2d Cir. 2003).

1.      An inmate must rely upon prison authorities to treat his serious medical needs; if the authorities deliberately fail to do so, those needs will not be met, and arguably the eighth amendment cruel and unusual punishment clause has been violated, as I will explain further.[1] Deliberate indifference to serious medical needs of prisoners may constitute the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.[2] This is true whether the indifference is manifested by intentionally denying or delaying access to medical care or intentionally interfering with treatment, once it is prescribed.[3] However, inadvertent failure to provide adequate medical care is not an unnecessary and wanton infliction of pain.[4] "Medical

---

[1]      <u>Estelle v. Gamble</u> , 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)

[2]      <u>Gregg v. Georgia</u>, 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976)

[3]      <u>Estelle v. Gamble</u>, <u>supra</u>, 429 U.S. at 104-05

[4]      <u>Id.</u>, at 105.

malpractice does not become a constitutional violation merely because the victim is a prisoner."[5] A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind."[6]  The civil rights statute was not meant to redress medical malpractice claims.[7]  Inmate do not have a constitutional right to the medical treatment of their choice.[8]  Thus, mere disagreement with prison officials about what constitutes appropriate medical care does not alone state a claim cognizable under the Eighth Amendment.[9]

2.     In order for the plaintiff to prevail on his claim of a deliberate indifference by the defendant to the plaintiff's serious medical needs, plaintiff bears the burden of proof and must meet both prongs of a  two-prong  standard.

(1)   First, the alleged deprivation must be, in objective terms, "sufficiently serious."[10]

(2)   Second, the charged employee or official must be personally involved, as I explained before, and also must act with a sufficiently culpable state of mind.[11]  Deliberate indifference requires more than negligence.  "A prison official does not act in a deliberately indifferent

---

[5]     Estelle v. Gamble, supra, 429 U.S. at 106.

[6]     Tomarkin v. Ward, 534 F.Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).

[7]     Tomarkin, 534 F.Supp. at 1230-31.

[8]     Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("correctional facility is not a health spa, but a prison in which convicted felons are incarcerated.").

[9]     Ross v. Kelly, 784 F.Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

[10]    Hathaway v. Coughlin, 37 F.3d 63 (2d Cir. 1994); Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991).

[11]    See Wilson v. Seiter, supra, 501 U.S. at 298.

manner unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[12]

"[A] prisoner's disagreement with his prescribed treatment does not afford a basis for relief under §1983."[13] Prisoners have no right to the medical treatment of their choice, so long as the prescribed treatment is based on applicable medical standards.[14] A prisoner's disagreement over doctor's judgment or course of treatment does not state a claim under §1983.[15] Therefore, two medical doctors may not agree with the proper treatment required. This disagreement standing alone does not make either doctor deliberately indifferent.

### Negligence Is Not A Grounds To Find For Plaintiff

3.      An act is negligent if the defendant was under a duty or obligation, recognized by law, that required him to adhere to a certain standard of conduct to protect others against unreasonable risks, and he breached that duty or obligation. Again, you may not find for the plaintiff against the defendant if you find that the his actions were merely negligent. I emphasize: the defendant must have been more than negligent in order for you to find him liable. Dr. Immordino must have acted sadistically and maliciously for the very purpose of

---

[12]     Farmer v. Brennan, 511 U.S. 825, 838, 114 S.Ct., 1970, 1978-79, 128 L.Ed.2d 811 (1994). Hathaway v. Coughlin, supra, 37 F.3d 63 (2d Cir. 1994).

[13]     Tomarkin v. Ward, 534 F.Supp. 1224, 1230 (S.D.N.Y. 1982). See Grimes v. Chernovetz, Civ. No. B-90-436 (WWE), 1991 U.S. Dist. LEXIS 14798 (D.Conn. 1991).

[14]     McCloud v. Delaney, 677 F.Supp. 230, 232 (S.D.N.Y. 1988). See also, United States ex rel. Hyde v. McGinnis, 429 F.2d 864, 866 (2d Cir. 1970).

causing harm to the plaintiff or he must have acted with the requisite culpable intention of causing the plaintiff pain.[16]

**Proximate Cause**

4.    The plaintiff must prove the defendant's acts were a proximate cause of the injuries sustained by the plaintiff.  Proximate cause means that there must be a sufficient causal connection between the act or omission of the defendant and any injury or damage allegedly sustained by the plaintiff.   An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury, that is, if the injury or damage was a reasonably foreseeable consequence of the defendant's acts or omissions.  If an injury was a direct result or a reasonably probable consequence of the defendant's acts or omissions, it was proximately caused by such act or omission.  In other words, if the defendant's act or omission had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

5.    In order to recover damages for any injury, the plaintiff must show by a preponderance of the evidence that such injury would not have occurred without the conduct of the defendant.  If you find that the plaintiff is complaining about an injury which would have occurred even in the absence of the defendant's conduct, you must find the defendant did not proximately cause plaintiff's injury.

6.    A proximate cause need not always be the nearest cause either in time or in space.  In addition, there may be more than one proximate cause of an injury or damage.  Many factors or

---

[15]    See Wells v. Franzen, 777 F.2d 1258, 1264 (7th Cir. 1985)(treatment of a prisoner's medical condition "generally defeats a claim of deliberate indifference").  Perez v. Hawk, 302 F.Supp.2d 9, 21 (E.D. NY 2004).

the conduct of two or more people may operate at the same time, either independently or together, to cause an injury.

7.     The defendant is not liable if plaintiff's injury was caused by a new or independent source of an injury which intervenes between the defendant's acts or omissions and the plaintiff's injury and which produces a result which was not reasonably foreseeable by the defendant. Nor would the defendant be liable if the plaintiff caused his own injuries through his behavior or actions.

8.     If you find that the plaintiff suffered some injury or pain but that his injury or pain was the result of his own behavior or some other intervening factor, then the defendant would not be liable for his injury.[17]

### Instructions On Affirmative Defenses Qualified Immunity

9.     If you find that the defendant did not deprive the plaintiff of his Eighth Amendment rights, then you need not consider the defendant's affirmative defenses. However, in the event that you should find that the defendant did deprive the plaintiff of his Eighth Amendment rights, the defendant still may not be liable to the plaintiff. In this sort of lawsuit, the defendant may be entitled to what is called qualified immunity.

10.     Qualified immunity shields a public official from liability provided that his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. I instruct you that at the time of the incident giving rise to this lawsuit, it was clearly established law that prison inmates enjoy a right to be free from the malicious and

---

[16]     <u>Authority</u>:  Modern Federal Jury Instructions, ¶ 87.03, Instruction 87-78.

sadistic allowance of pain by a prison official which is intended to cause harm to the inmate. However, even where rights are clearly established, a defendant official will be entitled to qualified immunity if it was objectively reasonable for him to believe that his actions did not violate those clearly established right.

11.     To put it the other way, an individual defendant will not be entitled to qualified immunity if, at the time the actions complained of he knew or should have known that his actions were contrary to federal law.  The simple fact that a defendant acted in good faith is not enough to bring him within the protection of this qualified immunity, nor is the fact that a defendant was unaware of the federal law.

12.     In deciding what a competent official would have known about the legality of the challenged conduct, you must consider the nature of a defendant's official duties, the character of his official position, the information which was known to him or not known to him, and the circumstances which confronted him.  You must ask yourself what a reasonable official in the defendant's situation would have believed about the legality of his or her conduct.  You should not, however, consider what the defendant's subjective intent was, even if you believe it was to harm the plaintiff.  The relevant question is what a _reasonable_ official in the defendant's situation would have thought about the legality of his or conduct.  If you find that a reasonable official in the defendant's situation would believe this conduct to be lawful, then he is entitled to qualified immunity.

---

[17]     Authority:  Modern Federal Jury Instructions, ¶ 87.08, Instruction, 87-79; Graham v. Western Line Consolidated School District, 439 U.S. 410, 99 S. Ct. 693 (1979); Mt. Healthy City School District Board of Educ. v. Doyle, 429 U.S. 274, 97 S. Ct. 568 (1977).

13.    The defendant has the burden of proving that he neither knew or should have known that his actions violated federal law.  If the defendant convinces you by a preponderance of the evidence that he neither knew nor should have known that his actions violated federal law, then you must return a verdict for the defendant, even though you may have previously found that the defendant, in fact, violated the plaintiff's constitutional rights under color of state law.

14.    Similarly, if the defendant convinces you by a preponderance of the evidence that a reasonable physician could disagree over whether his actions violated federal law, then you must return a verdict for the defendant, even though you may have previously found that the defendant, in fact, violated the plaintiff's constitutional rights under color of state law.[18]

### Damages

15.    Because the plaintiff is making a claim for money damages in this case, I must discuss the law of damages with you.  You should not take this discussion to suggest that the defendant did violate the plaintiff's rights or that he did not act in good faith.  You should not consider the question of damages at all, unless you have first determined that the defendant did violate the plaintiff's rights and that they did not act in good faith.

16.    I merely give you these instructions on the law of damages so that, in the event you do come to the conclusion that the plaintiff is entitled to recover, you will have sufficient guidance in arriving at a proper verdict.

---

[18]    Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683 (1974); Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987); Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092 (1986); Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 1085 (1986).

17.     And I want to repeat here that with regard to the matter of injuries and the matter of the damages, the same rule relative to the burden of proof on the plaintiff still applies.  In other words, the burden is on the plaintiff to prove these elements of damage by a fair preponderance of the evidence.  Just as it was in connection with his claimed allegations on the issue of liability.

18.     Plaintiff may not recover for emotional or mental distress alone.  Plaintiff may only recover for emotional and mental distress if he first establishes that he suffered a physical injury as a result of defendants' actions.[19]

19.     When monetary damages are sought in a lawsuit brought under Title 42, Section l983 of the United States Code, such as in this case, the burden is on the plaintiff to prove that Dr. Immordino, against whom money damages are sought, was personally involved in or responsible for the alleged violation of the plaintiff's constitutional rights.[20]

20.     You should keep in mind that although the defendant is employed by the State of Connecticut, he is being sued in his individual capacity and, hence, is personally exposed to payment of any damages which you award in his individual capacity.

21.     You may also keep in mind that the plaintiff is an inmate whose daily living expenses, including medical expenses, are being paid for by the State of Connecticut.

22.     There are two kinds of damages claimed by the plaintiff in this case.  The first is compensatory damages; that is, a sum of money to compensate the plaintiff for the denial of his federal constitutional rights for the alleged wanton and willful infliction of pain.

---

[19]     42 U.S.C. § 1997e.

[20]     Johnson v. Glick, 481 F.2d 1083.

23.    In estimating damages in a case of this sort, you are not at liberty to guess or infer what the damages are.  You must use your best judgment, remembering always that it is incumbent upon the plaintiff, even if you find that he is entitled to recover, to prove, by a fair preponderance of the evidence, the amount of the damages to which he is entitled.  It must be fairly proved that the verdict, if you come to a verdict for the plaintiff, is one which in your sound judgment represents the damages to which he is entitled under the rule applicable in the situation.

24.    The law does not recognize an inherent or abstract monetary value of a constitutional right; therefore, no compensatory damages may be awarded for a violation of a constitutional right absent proof of actual physical injury or loss.  If you do find that the defendant violated plaintiff's constitutional rights, but you do not find that the plaintiff suffered an actual physical injury or loss by virtue of his constitutional rights having been violated, then you may only award nominal damages of no more than one dollar for each violation of plaintiff's constitutional rights.[21]

25.    The rule for measuring compensatory damages may be briefly summarized as follows:  The plaintiff is to get fair and just compensation for the injuries which he has suffered.  It is for you, in the exercise of your best judgment, to say what is fair and just compensation to him insofar as money will compensate for the injury which he has suffered.  There is no fixed rule which you can apply.  You have to apply sound, common sense in reaching the amount of your

---

[21]    Authority:  Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S. Ct. 248 (1931); Kinty v. United Mine Workers of America, 544 F.2d 706 (4th Cir. 1976), cert. denied 429 U.S. 1093 (1977); Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir. 1962); U.S. Castings Co. v. Knight, 754 F.2d 1363 (7th Cir. 1985); Luria Brothers & Co. v. Pielet Brothers Scrap Iron Metal, Inc., 600 F.2d 103 (7th Cir. 1979).

verdict. Of course, in considering that, you are bound by the allegations of the pleadings, and also you must disregard any suffering which has come to him from other causes.[22]

26.     In determining the amount of a damage award, you should also consider that all the plaintiff's medical expenses have been paid by the State of Connecticut.

### Only One Recovery

27.     In considering damages in general, the plaintiff puts forth several grounds for liability. If you find liability, you may award damages to compensate for the injury, but you may not award damages twice for the same injury. Having recovered for an injury once, the plaintiff cannot be compensated a second time for the same injury.[23]

### Nominal Damages

### Damages For The Mere Fact Of Violation

28.     If you return a verdict for the plaintiff, but find that plaintiff has failed to prove by a preponderance of the evidence that he suffered any actual damages, then you may return an award of nominal damages not to exceed the sum of one dollar.

29.     Nominal damages may be awarded when the plaintiff has been deprived by the defendants of a Constitutional right but has suffered no actual damage as a natural consequence of that deprivation. The mere fact that a Constitutional deprivation occurred is an injury to the person entitled to enjoy that right, even when no actual damages flow from the deprivation. Therefore, if you find that plaintiff has suffered no injury as a result of the defendant's conduct

---

[22]     See, Wright, Conn. Jury Instructions, Sec. 226a.

[23]     Virgo v. Lyons, 209 Conn. 497, 551 A.2d 1243 (1988).

other than the fact of a Constitutional deprivation, you may award nominal damages not to exceed one dollar.[24]

**Special Verdict With Interrogatories**

34.    I have prepared a verdict form for you to use in recording your decisions which contains interrogatories, or written questions about some of the issues in this case.  These questions are to be answered "yes" or "no."  You should answer every question on this form "except where the form indicates otherwise."

35.    Your verdict must be unanimous and must reflect the conscientious judgment of each juror.

36.    The defendant respectfully requests leave to supplement this request for jury instructions after the evidence has been presented and prior to the charging conference.

**Additional Instructions Request By The Plaintiff**

1.    Jury be informed that this is a prisoner's constitutional right violation challenging his conditions of medical treatment by defendant medical doctor Peter Immordino during plaintiff, Nata Bob, at New Haven Community Corrections.

2.    Jury be briefed on the 8th Amendment constitutional rights of prisoners to enable jury adjudicate the case justly.

3.    Jury be informed defendant is being sued in his individual/personal capacities.

4.    Jury to consider the objective test regarding plaintiff's injuries in the past, present and future.

---

[24]    Authority:   Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); Familias Unidas v. Briscoe, 619 F.2d 391 (5th Cir. 1980); Williams v. Bennett, 689 F.2d

5.      Jury deliberation should be based on witness credibility, evidentiary documents, exhibits and facts governing "deliberate indifference" claim.

6.      Jury be informed that their verdict shall be based upon whether defendant's actions violated plaintiff's 8th Amendment constitutional rights and that verdict should not be dictated by/with prejudice to any party.

7.      Jury be informed to award plaintiff the amount he is seeking in damages if they find the defendant in violation of plaintiff's 8th Amendment constitutional rights.

### Defendant's Objections To Plaintiff's Jury Instructions

1.      As to number 4, defendant objects to "present and future" unless the plaintiff has demonstrated some foundation, making such claims an issue in this case.

2.      As to number 7, the defendant objects to the jury being instructed on any specific amount of damages to award as this would include the power of the jury to make what they deemed an appropriate award.

**XIII.      Anticipated Evidentiary Problems**

See Defendant's Memorandum, attached.

**XIV.      Proposed Findings / Conclusions of Law**

Not applicable, jury case.

**XV.      Trial Time**

2 days.

**XVI.      Further Proceedings**

None.

---

1370 (11th Cir. 1982).

21

**XVII.**      **Trial By Magistrate**

Consent given.

**XVIII.**      **Verdict Form**

<u>See</u> attached.

PLAINTIFF
Nata S. Bob


BY:_____/s/_____

Nata S. Bob, <u>Pro</u> <u>Se</u>
2055 Valentine Avenue, Apt. 2
Bronx, NY 10457
Tel: (718) 220-1236

DEFENDANT
Dr. Peter Immordino


RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:_____/s/_____

Michael J. Lanoue
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct05195
E-Mail:  michael.lanoue@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591

22

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 12th day

of April 2005:

Nata S. Bob
2055 Valentine Avenue, Apt. 2
Bronx, NY 10457


_____/s/_____
Michael J. Lanoue
Assistant Attorney General

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

NATA BOB                              :     CIVIL NO. 3:02CV1785 (DFM)

     V                                     :

JOHN ARMSTRONG, ET AL.               :     APRIL 12, 2005

### PROPOSED VERDICT FORM

We, the jury, unanimously find the following:

### Part I, Liability

1.    Did the plaintiff prove by a preponderance of the evidence that the defendant violated plaintiff's Eighth Amendment right to be free from being subjected to pain in a sadistic and malicious manner for the very purpose of causing him to suffer?

    _____ Yes     _____ No

**If No, Go to Question 3**.

2.    Did the plaintiff prove **both** (a) that he had a serious medical need, and (b) that the defendant was deliberately indifferent to that serious medical need?

    _____ Yes     _____ No

3.    If your answers to question 1 or question 2 were NO,  then you have completed your deliberations.  Have the foreperson sign and date the form and notify the Clerk that you have a verdict.

4.    If you answered yes to either question 1 or 2 above, did the defendant prove by a preponderance of evidence he reasonably believed to be acting in an objectively lawful manner and not in violation of any clearly established rights of plaintiff?

    _____ Yes     _____ No

If you answered yes to question 4, then you have completed your deliberations. You should have the foreperson sign and date the form and report to the clerk.  Only if you answered yes to questions 1 or 2, and no as to question 4, then go to Part II now.  Otherwise, SIGN, DATE and report your verdict.

**Part II.**        <u>**Damages**</u>

5.        Did the plaintiff suffer actual damages proximately caused by the violation of his constitutional rights?         Yes _____                 No _____

6.        If you find that the plaintiff failed to prove actual damages from a constitutional violation and you answered "NO" to question 5, do you find an award of one dollar in nominal damages appropriate?

                Yes _____                 No_____

7.        If plaintiff proved by a preponderance of the evidence that he is entitled to compensatory damages, what amount is fair and reasonable?

<u>**AMOUNT OF DAMAGES**</u>         _____

When you have finished answering the appropriate questions on this form, you may report your verdict.

The form should be signed and dated by the foreperson.

_____                 _____
        Foreperson                                     Date